UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALEJANDRO MANUEL ZAPATA OSORIO,
ARTURO DEL RAZO, BRAULIO
ROLANDO CASHABAMBA CHANGO,
BYRON SALVADOR BARRERA SANCHEZ,
CARLOS E. SIERRA RODRIGUEZ, EDWIN
FABRICIO CASHABAMBA TUBON, JESUS
SIERRA, JUAN SIERRA, RAMON ROSALES
GALVEZ, RAUL CHAVEZ DIAZ, SEGUNDO
LEANDRO ALULEMA GUANO, SEGUNDO
NICOLAS SIGUENCIA ENCALADA, and
WILDER RODRIGUEZ, *individually and on behalf
of others similarly situated*,

                                    Plaintiffs,

                                    - vs -

VECTOR STRUCTURAL PRESERVATION CORP.
(D/B/A VECTOR STRUCTURAL PRESERVATION),
NORTH STAR STRATEGY, INC.
(D/B/A NORTH STAR STRATEGY, INC.), BILL
HANDAKAS, BILL HANDAKAS, VASSILIOS
HANDAKAS , and SERGIO DOE,

                                  Defendants.
-------------------------------------------------------------------X

Declaration of Vassilios Handakas in Support of Defendants' Pre-Motion Letter and Motion for <u>Summary Judgment</u>

Case No. 1:19-cv-04896-LDH-ST

STATE OF NEW YORK)
                     )Ss.:
COUNTY OF NASSAU)

        Vassilios Handakas, being duly sworn, deposes and says.

1. I was a manager of Vector Structural Preservation Corp. ("Vector"). I am not a shareholder of Vector. As such, I am familiar with the instant matter.

2. I am sometimes referred to as "Bill Handakas."

3. Vector performed work at a construction project in Yonkers, New York (the "Yonkers Project") from on or about March 2018 through on or about June 2020.

4. On or about June 23, 2018, Vector retained North Star Strategy, Inc. ("North Star") and South Side Services Inc. ("South Side") to hire workers for the Yonkers Project.

5. Upon information and belief, North Star and South Side were both owned by Sal Almonte and, for all intents and purposes, are the same entity.

6. Vector and I have never taken improper/illegal deductions from Vector's employees' salaries for any reason or at any time.

7. For the limited times in which certain Plaintiffs in this matter were on Vector's payroll, Vector always gave them accurate statements of wages, notice of their rate of pay, notification of overtime and wages, Vector's regular day pay, and such info as required by NYLL § 195(1). The notification of rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1) was always given in Spanish and English.

8. Further, when these Plaintiffs were on Vector's payroll, they never had unpaid meal and coffee breaks.

9. Vector directly paid this subset of Plaintiffs only during the limited time in which they were on Vector's payroll. When they were on the payrolls of North Star and/or South Side, those entities paid their wages.

10. During the time that Vector maintained a payroll, its employees were provided the required weekly paystubs with hours worked and statutory deductions.

11. When these certain Plaintiffs were on Vector's payroll, they were always paid by check. At no point were they ever paid by cash. Further, they were always paid in full by Vector when on Vector's payroll.

12. These certain Plaintiffs left Vector's employment and began to work for North Star and South Side, at latest, at the end of June, 2018, which is when Vector retained North Star and South Side to work at the Yonkers Project.

13. When these certain Plaintiffs left Vector's employment, they were removed from Vector's payroll, and Vector no longer maintained employment records of these Plaintiffs.

14. I had extremely limited interactions with Sergio "Doe" ("Sergio"), North Star's supervisor of Plaintiffs at the Yonkers Project. We interacted solely at weekly meetings at the Yonkers Project, at which I was, at most times, a passive observer. At these meetings, I listened as other individuals discussed the status of the Yonkers Project and the upcoming schedule.

15. I never directed Sergio in any capacity. I never told him what Vector wanted Plaintiffs to do at the Yonkers Project. Sergio was responsible for giving Plaintiffs their work assignments and supervising their work, responsibilities in which I never partook in at the Yonkers Project.

16. Indeed, once Vector retained North Star and South Side, all supervisory responsibilities were taken over by these entities.

17. Plaintiffs never worked at Vector's facilities. They never even visited Vector's facilities.

18. Neither Vector and North Star nor Vector and South Side are joint employers. I have no interest whatsoever in those entities. I have never owned them, made any decision for them, or had any involvement in their management or control.

Further, Vector's business did not shift to North Star, and North Star's business did not shift to Vector.

19. Vector does not have any common ownership with North Star. It does not own North Star. North Star does not own it. The former owner of Vector, my father, did not own North Star. North Star was, instead, a company that contracted construction workers to construction companies, such as Vector.

20. Neither myself nor any other Vector manager, including my father, managed North Star in any capacity. My father and Vector's managers, including myself, had absolutely zero authority or capacity to direct North Star's operations in any manner. The opposite is also true—North Star had zero authority or capacity to direct Vector's operations in any manner.

21. Simply, North Star and Vector are completely different entities. Their operations are not related. North Star cannot direct Vector employees, and Vector cannot direct North Star employees. North Star and its owner(s) had and have no ownership stake in Vector, and Vector and its former owner did not and do not have an ownership stake in North Star. Vector has no financial control over North Star, and North Star has no financial control over Vector.

22. Further, Vector maintains employment records solely of those individuals on its payroll. It never maintains employment records for individuals not on Vector's payroll.

_____
Vassilios Handakas

Sworn to before me this
26 day of April, 2022

_____
Notary Public

GAYLE A. ROSEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO6055170
Qualified in Nassau County
Commission Expires February 5, 2026