UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ZAPATA OSORIO, ARTURO DEL RAZO, BRAULIO ROLANDO CASHABAMBA CHANGO, BYRON SALVADOR BARRERA SANCHEZ, CARLOS E. SIERRA RODRIGUEZ, EDWIN FABRICIO CASHABAMBA TUBON, JESUS SIERRA, JUAN SIERRA, RAMON ROSALES GALVEZ, RAUL CHAVEZ DIAZ, SEGUNDO LEANDRO ALULEMA GUANO, SEGUNDO NICOLAS SIGUENCIA ENCALADA, AND WILDER RODRIGUEZ

         Plaintiffs,

v.

VECTOR STRUCTURAL PRESERVATION CORP., NORTH STAR STRAEGY, INC., BILL HANDAKAS, VASSILIOS HANDAKAS, AND SERGIO DOE,

         Defendants.

**MEMORANDUM AND ORDER**
19-CV-4896 (LDH) (ST)

---

LaSHANN DeARCY HALL, United States District Judge:

  Alejandro Manuel Zapata Osorio, Arturo Del Razo, Braulio Rolando Cashabamba Chango, Byron Salvador Barrera Sanchez, Carlos E. Sierra Rodriguez, Edwin Fabricio Cashabamba Tubon, Jesus Sierra, Juan Sierra, Ramon Rosales Galvez, Raul Chavez Diaz, Segundo Leandro Alulema Guano, Segundo Nicolas Siguencia Encalada, and Wilder Rodriguez (collectively, "Plaintiffs") bring the instant action against Vector Structural Preservation Corp. ("Vector"), Bill Handakas and Vassilios Handakas[1] ("Handakas") (together, the "Vector Defendants"), North Star Strategy, Inc. ("North Star"), and Sergio Doe (collectively,

---

[1] Defendants Bill Handakas and Vassilios Handakas are the same person. (Rule 56.1 Statement of Material Facts ¶ 1 n.1, ECF No. 64-20.)

1

"Defendants")[2] for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The Vector Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all of Plaintiffs' claims.

## UNDISPUTED FACTS[3]

Many of the facts relevant to this opinion are in dispute. In any event, Vector is a construction company that entered a construction contract for a project in Yonkers, New York (the "Yonkers Project"), pursuant to which Vector performed work from March 2018, through June 2020.[4] (Defs.' Rule 56.1 Statement of Material Facts ("Defs.' 56.1") ¶¶ 1–2, 6–7; Pls.' Rule 56.1 Statement of Material Facts ("Pls.' 56.1") ¶¶ 77–78, ECF No. 64-20.) Vector retained North Star and South Side Services ("South Side") to provide labor for the Yonkers Project. (Defs.' 56.1 ¶¶ 8, 10.) North Star and South Side are "for all intents and purposes, the same entity." (*Id.* ¶ 11.) On or about June 23, 2018, North Star began providing construction workers for the Yonkers Project. (*Id.* ¶ 9.)

Plaintiffs were construction workers on the Yonkers Project. (Pls.' 56.1 ¶ 76.) Sal Almonte, who owns both North Star and South Side, hired Defendant Sergio Doe to work for North Star and supervise Plaintiffs at the Yonkers Project. (Defs.' 56.1 ¶¶ 11, 13–14, 16.)

---

[2] Defendants North Star and Sergio Doe have not appeared in this action.
[3] The foregoing facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). On numerous occasions, Plaintiffs' response to Defendants' statement of facts is "[a]dmitted that this is the substance of Defendant's testimony." Because Plaintiffs fail to properly controvert these facts, the Court deems them admitted.
[4] Although not highlighted in Plaintiffs' Rule 56.1 statement, the agreement provides that Bill Handakas shall "supervise and direct work using [his] best skill and attention. [He] shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating …" and "shall employ a competent superintendent and necessary assistants who shall be in attendance at the project site during performance of the work. The superintendent and all supervisors on the job shall represent [Handakas], and communications given to them shall be as binding as if given to [Handakas]." (Errington Declaration, Exhibit A at §§ 6.2.–6.4, ECF No. 55-1.) The same contract appends a Wage Rate Sheet which provides rates of pay for laborers. (*Id.* at p. 48.)

Almonte never supervised Plaintiffs. (Pls.' 56.1 ¶ 86.) Doe, who was present at the Yonkers Project daily, was the only person to direct Plaintiffs on the project and hired "at least some" of the Plaintiffs. (Defs.' 56.1 ¶¶ 17–19.) The parties dispute whether North Star had "total control" over Plaintiffs. (*Id.* ¶ 24.) The Vector Defendants claim that only North Star had the ability to fire Plaintiffs and to determine and pay their wages. (*Id.* ¶¶ 24–26.)

The parties dispute whether the Vector Defendants had an employment agreement with or directed any North Star employees, including Plaintiffs. (*Id.* ¶ 28; Pls.' 56.1 ¶ 73.) Handakas, a manager at Vector who supervised only Vector's employees, hired at least some Plaintiffs. (Defs.' 56.1 ¶¶ 2, 4–5; Pls.' 56.1 ¶ 87.) At least some Plaintiffs had worked for Vector on previous projects, and at least one Plaintiff was never told that he would be working for North Star. (Pls.' 56.1 ¶¶ 85, 87.) Defendants claim that some Plaintiffs have never heard of Vector or had any knowledge of Handakas. (Defs.' 56.1. ¶¶ 52, 54.) The parties also dispute whether any Plaintiffs ever visited Vector facilities. (*Id.* ¶ 55.)

The parties also dispute the level of interaction between Handakas and Doe, who supervised Plaintiffs at the Yonkers Project. (*Id.* ¶ 20.) Handakas claims that his interactions with Doe were limited to weekly job meetings to which Handakas did not contribute. (*Id.* ¶¶ 20–22.) Plaintiffs claim that Doe received instructions from Handakas. (Pls.' 56.1 ¶ 84.) Plaintiffs supplied their own tools while working on the Yonkers Project. (Defs.' 56.1 ¶ 56.)

Plaintiffs Juan Sierra, Jesus Sierra, Ramon Rosales Galvez, Segundo Leandro Alulema Guano, and Segundo Nicolas Siguencia appear on Vector's payroll for a brief period during which "a subcontractor left the Yonkers Project and Vector had to keep the project moving until it could retain a new entity to provide workers." (*Id.* ¶¶ 29–30; Pls.' 56.1 ¶ 79.) Jesus Sierra and Juan Sierra were on Vector's payroll from June 20, 2018, through June 26, 2018. (Defs.' 56.1 ¶¶

3

33, 35).  Rosales was on Vector's payroll from April 26, 2018, through June 20, 2018.  (*Id.* ¶ 37.)  Alulema was on Vector's payroll from April 19, 2018, through May 9, 2018.  (*Id.* ¶ 39.)  Siguencia was on Vector's payroll from April 12, 2018, through June 20, 2018.  (*Id.* ¶ 41.)  This group of Plaintiffs was removed from Vector's payroll once Vector retained North Star and South Side for the Yonkers Project.  (*Id.* ¶ 31.)  After moving these Plaintiffs to North Star's payroll, Vector stopped maintaining employment records for these Plaintiffs.  (*Id.*)  The remaining Plaintiffs appear only on North Star's and South Side's payrolls.  (*Id.* ¶¶ 50–51.)  Plaintiffs also claim that their work did not change after they were shifted from Vector's payroll to North Star's payroll, although Defendants point out that only one Plaintiff's declaration makes this claim.  (Pls.' 56.1 ¶ 83; Defs.' Resp. 56.1 ¶ 83.)

The parties dispute whether the Plaintiffs who were on Vector's payroll during the brief period were paid in full during that time.  (Defs.' 56.1 ¶ 42.)  While on Vector's payroll, Plaintiffs were paid by check, and Defendants did not take improper deductions.  (*Id.* ¶¶ 43–44.)  Plaintiffs were never given unpaid meal periods and coffee breaks.  (*Id.* ¶ 45.)  Plaintiffs also never received 1099 or W-2 forms from Vector.  (*Id.* ¶ 53.)  Plaintiffs dispute that they were given notifications regarding overtime and wages, accurate statements of wages, or notices in English and Spanish of their rate of pay, pay day, and other NYLL-required information.  (*Id.* ¶¶ 46–48; Pls.' 56.1 ¶ 80.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

FLSA establishes minimum wage, overtime pay, recordkeeping, and other employment standards. In addition, FLSA creates a private right of action against any "employer" who violates its terms. *See* 29 U.S.C. § 207(a)(1). It is axiomatic, therefore, that to be liable under FLSA, a defendant must first be deemed the plaintiff's employer.

Under FLSA, "employer" is defined broadly, reaching "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To be an "employer" within the meaning of FLSA, "an individual defendant must possess control over a company's actual operations in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) (internal citation and quotation omitted). FLSA's definition of "employer" may apply to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a), (d).

5

FLSA defines "employer" broadly and is determined on a "case-by-case basis" by looking to the "'economic reality' of a particular employment situation." *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008)).[5] In any event, the Second Circuit has long directed that "the determination of whether an employer-employee relationship exists . . . should be grounded in economic reality rather than technical concepts." *Irizarry*, 722 F.3d at 104 (citing *Barfield*, 537 F.3d at 141) (quotations omitted). Accordingly, courts consider whether a defendant exercised formal control over a plaintiff's employment, *see Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984), or "functional" control, *see Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72-73 (2d Cir. 2003).[6]

Here, the Vector Defendants seek summary judgment, arguing that Plaintiffs fail to provide evidence sufficient to prove that the Vector Defendants acted as their employers under FLSA or NYLL. (Defs.' Mot. Summ. J. ("Defs.' Mem.") at 1, ECF No. 64-1.) Plaintiffs counter that, at a minimum, there is a genuine dispute as to whether the Vector Defendants were joint employers with North Star and Doe. (Pls.' Opp'n Defs.' Mot. Summ. J. ("Pls.' Mem.") at 6–8, ECF No. 64-12.) Interestingly, courts in this circuit have consistently held that a determination

---

[5] "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) (citing N.Y. Lab. Law § 2(7)). As such, courts in this circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188, 11-CV-2511, 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013) (citations and quotations omitted) (collecting cases). Accordingly, the Court analyzes together whether Defendants are employers under NYLL and FLSA.

[6] "*Carter* thus stands solely for the proposition that the four factors applied by the District Court in the instant case can be sufficient to establish employer status." *Zheng v. Liberty Apparel Co. Inc*., 355 F.3d 61, 71 (2d Cir. 2003). If a Defendant does not satisfy the formal control factor, the Court must also consider whether the Defendant is a joint employer under the functional control test. *See id.* at 71–72 (remanding for the district court to evaluate whether defendants had functional control); s*ee also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 35 n.5 (E.D.N.Y. 2015) ("In the event that an individual defendant is not found to have formal control, he or she may still be found to be a joint employer along with a corporate defendant under another test called the "functional control" test").

6

of employer status in the FLSA context is typically ill-suited for summary judgment. *See Wang v. LW Rest. Inc.*, 81 F. Supp. 3d 241, 254 (E.D.N.Y 2015) ("[T]he existence and degree of each relevant factor lend[s] itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment.") (internal citations omitted); *see also Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012); *Franco v. Ideal Mortg. Bankers Ltd.,* No. 07-CV-3956, 2011 WL 317971, at *6 (E.D.N.Y. Jan. 28, 2011). Such is the case here.

### I. Formal Control

Under the "formal control test" articulated in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), a court asks whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018). "No single factor of the test is dispositive, and the Court's determination is to be based at all times on the totality of the circumstances." *Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d 216, 221 (E.D.N.Y. 2016).

First, the Court must consider whether the Vector Defendants "had the power to hire and fire" Plaintiffs. *Carter*, 734 F.2d at 12. The Vector Defendants argue that North Star had the solitary power to hire and fire Plaintiffs because North Star had "total control" over Plaintiffs at the Yonkers Project. (Defs.' Mem. at 11; *see also* Decl. of Michael Rabinowitz ("Rabinowitz Decl.") Ex. A, Handakas Dep. Tr. 29:4, ECF 64–4.) But, whether North Star had total control over Plaintiffs is clearly disputed. The Vector Defendants insist that the fact that Vector retained North Star to provide workers for the Yonkers Project is evidence that only North Star, and not the Vector Defendants, had the power to hire and fire Plaintiffs. (Defs.' Mem. at 11; Defs.' 56.1 ¶¶ 8, 9, 12.) According to the Vector Defendants, that North Star's supervisor, Doe, hired "at

7

least some of" Plaintiffs, demonstrates that the Vector Defendants lacked the ability to hire Plaintiffs. (Defs.' Mem. at 12–13; Defs.' 56.1 ¶ 14, 15, 19.) But, the fact that Vector retained a subcontractor to hire workers for it does not mean that Vector was necessarily deprived of the power to do so. To the contrary, the Vector Defendants concede that Handakas, as a Vector manager, also "personally hired at least some of the Plaintiffs" for the Yonkers Project.[7] (Pls.' 56.1 ¶ 87.) Thus, the Vector Defendants' argument that North Star had "total control" over hiring and firing Plaintiffs is undermined by Handakas's direct hires for the Yonkers Project. (*Id*.; Defs.' 56.1 ¶ 24.)

Second, the Court must consider whether the record indicates that the Vector Defendants "supervised and controlled employee work schedules or conditions of employment." *Carter*, 735 F.2d at 12. The Vector Defendants argue that the record indisputably reflects that only Doe supervised and controlled Plaintiffs work schedules and conditions of employment. (Defs.' Mem. at 15.) In support, the Vector Defendants point to Plaintiffs' admissions that Defendant Handakas supervised only Vector employees, and that Doe, who worked for North Star, was the only one to "direct" Plaintiffs. (*Id*. at 14–15.) But, "the law does not require an employer 'to look over his workers' shoulders every day in order to exercise control." *Barfield*, 537 F.3d at 147 (citation omitted). Instead, a defendant exercises control over workers when he has authority over a manager who directly supervises them. *See Irizarry*, 722 F.3d at 106-07 (finding that a chairman was an employer under FLSA where he had authority over the operations manager, who directly supervised the guards).

---

[7] The Vector Defendants concede that they directly employed five plaintiffs and that at least two Plaintiffs have a cause of action against them. (Defs.' Mem. at 5.) Although Defendants argue that "only two" Plaintiffs have potential claim against them, Defendants also ask the Court to limit direct employment claims to Juan Sierra, Segundo Nicolas Siguencia Encalada, and Ramon Rosales Galvez. (Defs.' Mem. at 5, 7.)

8

Importantly, the Vector Defendants fail to adequately address Plaintiffs' argument that Defendant Handakas was ultimately responsible for Plaintiffs' work. (Pls.' Mem. at 10.) Specifically, the Vector Defendants ignore Plaintiffs' deposition testimony that referred to Defendant Handakas as "[Doe's] boss" or the "company owner" and fail to acknowledge that at least one Plaintiff "directly observed" Defendant Handakas give instructions to Doe. (Pls.' Mem. at 10–11; Pls.' 56.1 ¶ 84.) Instead, the Vector Defendants direct the Court to *Chen v. DG and S NY, Inc.*, where the Court found that a single plaintiff's view that the defendant was her "supervisor and boss," without supporting evidence, did not make it so. 406 F. Supp. 3d 216, 222 (E.D.N.Y. 2016). But *Chen* is unhelpful, where, as here, Plaintiffs have put forth evidence that they observed conversations where Handakas instructed Doe, Handakas was in charge of Doe, and Doe told at least one Plaintiff that Handakas was his supervisor. (Pls.' 56.1 ¶ 84, Pls.' Mem. at 10-11, 16–17, 19.) The Court can reasonably infer that Vector communicated about Plaintiffs' conditions of employment and "at least indirectly controlled" the conditions of their employment. *Chen v. Street Beat Sportswear Inc.*, 364 F. Supp. 2d 269, 287–88 (E.D.N.Y. 2005). Accordingly, Plaintiffs have established a genuine dispute as to whether Handakas was indirectly responsible for the conditions of their employment.

Third, the Court must assess whether the Vector Defendants determined Plaintiffs' rate and method of pay. *Carter*, 735 F.2d at 12. According to the Vector Defendants, the record shows that only North Star set and paid Plaintiffs' wages. (Defs.' Mem. at 13.) In particular, they highlight Plaintiff Rodriguez's testimony, which identifies Doe as a distributor of Plaintiffs' wages but fails to identify who provided Doe with those wages. (Defs.' Mem. at 13; *see also* Defs.' 56.1 ¶ 26; Pls.' 56.1 ¶ 84; Rabinowitz Decl., Ex. B, Rodriguez Tr. 23:6–10, ECF No. 64-5.) According to the Vector Defendants, Plaintiffs' failure to identify who provided Doe with

9

the wages means that their beliefs that the Vector Defendants determined their wages are merely "subjective." (Defs.' Mem. at 14.) In so arguing, the Vector Defendants again direct the Court to *Chen v. DG and S NY, Inc.*, where the plaintiffs only relied on the fact that defendants distributed salaries to deduce that the defendants' determined their salaries. 406 F.Supp.3d at 221. But, unlike the plaintiffs in *Chen*, Plaintiffs here offer concrete evidence that Defendants set at least some rates of pay. (Pls.' Mem. at 11.) Indeed, as Plaintiffs argue, because Vector began the Yonkers Project in March 2018 but did not retain North Star until June 23, 2018, North Star could not have set a rate of pay for all Plaintiffs. (*Id.*) Plaintiffs' evidence that Defendant Handakas fielded complaints regarding inaccurate pay also suggests that the Vector Defendants determined pay. (*See* Decl. of Clela Errington ("Errington Decl."), Ex. D, Decl. of Ramon Rosales ("Rosales Decl") ¶ 14, ECF 64–17. ("Whenever we complained about our checks, shortly thereafter, our foreman [Doe] … would reprimand us stating that Bill had called him and asked him to tell us not to complain.")) The same is true of Plaintiff Del Razo's testimony that on at least on one occasion, Doe stated that Handakas would pay Plaintiffs. (Rabinowitz Decl., Ex. D, Del Razo Tr. 24:21–24, ECF No. 64-7.) Defendants' arguments that Del Razo's testimony and Rosales' Declaration, at most, suggest that Handakas "promised payment in the future," but does not indicate who paid Plaintiffs, (Defs.' Mem. at 14), fall short. As the Vector Defendants concede, at least one Plaintiff expressly claims that Handakas paid Plaintiffs' wages. (*Id.*; Decl. of Segundo Nicolas Siguencia ("Siguencia Decl.") ¶ 9, ECF No. 64-15.) Drawing all inferences in Plaintiffs' favor, the Court finds a genuine issue of material fact as to whether Defendants were responsible for Plaintiffs' rate and method of pay.

Fourth, the Court must consider whether the evidence indicates that the Vector Defendants maintain Plaintiffs' employment records. *Carter*, 735 F.2d at 12. The Vector

Defendants argue that while Vector has certain payroll records, Plaintiffs have not met their burden to show who maintained those records. (Defs.' Mem. at 16.) The Court finds this factor inconclusive, as there is a lack of evidence regarding whether the Vector Defendants maintain employment records. Indeed, the only evidence regarding employment records is Handakas' testimony that Vector placed some Plaintiffs on its payroll for approximately ten weeks after the subcontractor that preceded North Star left the Yonkers Project. (Rabinowitz Decl., Ex. A, Handakas Dep. Tr. 57:14–58:12.) Plaintiffs argue that although they lack independent knowledge regarding whether the Vector Defendants maintain those employment records, the Vector Defendants must have had access to payroll records because they produced them during discovery. (Pls.' Mem. at 12.) Although Plaintiffs' showing does not amount to concrete evidence to create a genuine issue of material fact, the Vector Defendants also fail to point to any evidence to persuade the Court that they did not maintain the relevant records. Accordingly, this factor does not militate in favor of either party.

Taken together, the Court finds that the *Carter* factors create a genuine dispute of fact as to whether Defendants acted as joint employers.

## II. Functional Control

Under the "functional control" test, a court asks "(1) whether [defendant's] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [defendant's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [defendant's] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for

11

[defendants]." *Zheng*, 355 F.3d at 72 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724–25 (1947)).

As to the first factor, the parties agree that Plaintiffs did not use Vector's or Handakas's equipment or premises. (Defs.' 56.1 ¶ 56.) However, as Plaintiffs point out, the fact that Plaintiffs also did not use North Star's premises or tools renders this factor neutral. *See, e.g.*, *Zavala v. PEI Elec. Servs. Grp. Inc.*, No. 20-cv-9437, 2022 WL 2312794, at *9 (S.D.N.Y. June 28, 2022) (noting that this factor requires the joint employer to "maintain at least some possessory interest in the premises at issue" and finding that because neither company owned the premises, the factor was neutral); *see also Monzano-Moreno v. Libqual Fence Co.*, No. 18-cv-161, 2021 WL 730663, at *13 (E.D.N.Y. Feb. 5, 2021) (considering whether the joint employers had ownership interest in the premises and tools).

Second, there is no evidence in the record as to whether North Star's business shifted from Vector to other contractors. In an apparent misunderstanding of this inquiry, the Vector Defendants point to Handakas' declaration that "North Star's business did not shift to Vector." (Defs.' Mem. at 18 (citing Defs.' 56.1 ¶ 63).) As Plaintiffs argue, the relevant question here is whether the employees hired by North Star were or could have been sent to work for projects other than Vector's. *See Grenawalt v. AT&T Mobility LLC*, 642 Fed. App'x. 36, 38 ("But *Zheng* looked to whether the contractor . . . could shift its employees from one employer to another."); *see also Barfield*, 537 F.3d at 145 (asking whether any "referral agency shifted its employees as a unit from one hospital to another"). Indeed, the second factor "is relevant because a subcontractor that seeks business from a variety of contractors is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client." *Zheng*, 355 F.3d at 72.

12

Because the parties point to no evidence bearing on whether North Star could have assigned Plaintiffs to work on projects for other companies, the Court finds this factor inconclusive.

As the parties acknowledge, the third factor, the extent to which Plaintiffs performed a discrete line-job that was integral to the putative employer's process of production, is likely not applicable here. (*See* Defs.' Mem. at 19; Pls.' Mem. at 14.) Indeed, it is well settled that this factor is typically implicated when there is "work on a production line," or where employees perform "an essential step in the producer's integrated manufacturing process." *Zheng*, 355 F.3d at 73. Here, where there is no doubt that Plaintiffs did not perform a discrete line-job and worked in the construction industry, the Court finds this factor inapplicable.

Fourth, the responsibility to provide employees could and did pass from one employer to the next. This factor assesses whether "if the putative joint employer hired one contractor rather than another, the same employees would continue to do the same work in the same place." *Jean-Louis v Metro. Cable Communs., Inc.*, 838 F. Supp. 2d 111, 134 (S.D.N.Y. 2011). As Plaintiffs argue, this factor counsels in favor of joint employership. Handakas testified that five Plaintiffs were taken off of his payroll and shifted to North Star. (Defs.' 56.1 ¶¶ 29–30; Pls.' 56.1 ¶ 79.) The evidence also shows that the Plaintiffs were on both North Star and South Side's invoices. (Defs.' 56.1 ¶ 31.) And, multiple Plaintiffs testified that their work did not change at all when they stopped receiving payment from Vector and started receiving checks or cash purporting to be from North Star. (Pls.' 56.1 ¶ 83; Defs.' Resp. 56.1 ¶ 83.) Thus, this factor weighs in favor of joint employer status. *See Street Beat*, 364 F. Supp. at 286 (factor weighed in favor of joint employment where "plaintiffs were tied to [joint employer] rather than the contractors that hired them").

13

Fifth, the inquiry into "the degree to which [defendants] or their agents supervised plaintiffs' work" is "largely the same" as the inquiry under the second factor of the formal control test – whether Defendants supervised and controlled employee work schedules or conditions of employment. *Zheng*, 355 F.3d at 72; *Godlewska v. Hum. Dev. Ass'n, Inc*, 916 F. Supp. 2d 246, 264 (E.D.N.Y. 2013), *aff'd sub nom. Godlewska v. Hum. Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014). Consistent with the Court's analysis above, the Court finds that there is a genuine dispute regarding whether Vector "at least indirectly controlled" Plaintiffs' employment conditions. *See Street Beat*, 364 F. Supp. at 287–88.

Finally, the record presents a genuine dispute as to whether Plaintiffs worked exclusively or predominantly for the Vector Defendants during the relevant period. Courts in this Circuit have found that this sixth *Zheng* factor is satisfied where the Plaintiffs worked on site for the putative joint employer – that is, that the subcontractor in question did not send them to work for other contractors concurrently. *See, e.g.*, *Zavala*, 2022 WL 2312794, at *11 (finding in favor of plaintiffs where they showed that they worked exclusively on site for the putative joint employer during the relevant time period); *Godlewska*, 916 F.Supp.2d at 265 (finding that this factor weighed in favor of plaintiffs where they worked full time for the purported joint employer's patients for the relevant time periods). The record indisputably reflects that Plaintiffs worked on the Yonkers Project full time during the relevant period. Indeed, as Plaintiffs point out, to the extent that any of the Plaintiffs worked on multiple projects for the entities in this case, they worked on multiple projects for Vector, not North Star. (Pls.' Mem. at 17; *see, e.g.*, Errington Decl., Ex. D, Rosales Decl. ¶ 3-4.) Accordingly, this factor weighs in favor of Plaintiffs.

14

As Plaintiffs argue, the *Zheng* factors are either inconclusive or militate in favor of Plaintiffs. The Court finds a genuine dispute of material facts bearing on whether the Vector Defendants had functional control over Plaintiffs.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

SO ORDERED.  /s/ LDH
Dated: October 28, 2024  LaSHANN DeARCY HALL
Brooklyn, New York  United States District Judge

15